**Kenneth R. WALKER, Howard L. Beesley, Clayton Unger, and Harry C. Drake, Individually and as Representatives of a Class of Plaintiffs Similarly Situated, Plaintiffs,**

**v.**

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, and Fred Cook, as Plan Administrator of Management Income Protection Plan of Mountain Bell, Defendants.**

**Civ. A. No. 84–M–790.**

United States District Court, D. Colorado.

Sept. 22, 1986.

Martin Zerobnick, Richard G. Sander, Curtis L. Kennedy, Denver, Colo., for plaintiffs.

David T. Fisher, Mountain States Tel. and Tel. Co., Dirk W. de Roos, Elizabeth A. MacDonald, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The plaintiffs in this action claim they were wrongfully denied certain retirement benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. The defendants are the plaintiffs' former employer, the Mountain States Telephone and Telegraph Company ("Mountain Bell") and Fred Cook, as the Plan Administrator of the company's Management Income Protection Plan ("MIPP"). The plaintiffs are former first and second level managers of Mountain Bell who retired from the company between January 1, 1982 and October 31, 1983.

On January 3, 1986, this court issued an order certifying the plaintiffs' claims under ERISA as a class action under Fed.R.Civ.P. 23, and dismissing claims for common law fraud, breach of contract, and constructive fraud as preempted by ERISA. Another claim under the Age Discrimination in Employment Act is also pending as a class action which is separate from the matter now under consideration.

The defendants moved for summary judgment of dismissal of the ERISA claims because the plaintiffs in this action do not have standing to bring suit. In their cross motion for partial summary judgment, the plaintiffs contend that the defendants violated ERISA, breaching several statutory fiduciary duties, by not offering plaintiffs MIPP benefits and that denial of plaintiffs' contractual rights to those benefits is arbitrary and capricious.

In 1980 Mountain Bell adopted MIPP as a plan "designed for management employees who have been designated as surplus and are terminating employment with the Bell System for that reason." MIPP is a company funded plan providing for "certain separation payments, medical insurance coverage and professional outplacement services." The plan adopted in 1980 provided for participation in MIPP by full and part-time management employees in levels one through five with six months or more net credited service with the company, "who are individually or as a group designated surplus."

MIPP had originated as a model plan developed by AT & T in 1980 in anticipation that a surplus of management employees would result from divestiture actions required of that company. Mountain Bell announced that it had adopted the plan in the company's November 19, 1980 management newsletter. The article stated that MIPP was a "program of last resort to be used when all other avenues are exhausted" in efforts to reduce the number of management jobs. Defendants' Exhibit 32(A). Fred Cook, Vice President-Human Resources and the named fiduciary of MIPP, was quoted in the article saying that MIPP supersedes or replaces any other plan to accommodate management terminations due to surplus.

The plaintiffs claim that the result of this publication was to make all first through fifth level managers with at least six months net credited service at Mountain Bell participants of MIPP, entitled to receive MIPP benefits if they became surplus and elected to take early retirement. According to the plaintiffs, once the plan was adopted, Mountain Bell had only two options to effectuate a reduction in force for management positions: fire surplus employees or offer them MIPP benefits.

Plaintiffs assert that between October 1980 and April 1982, Mountain Bell gave MIPP benefits to more than twenty first and second level managers, then changed MIPP, effective November 1, 1982, to exclude first and second level managers before the first management workforce reduction. The November 1, 1982 version of MIPP limited participation to managers in levels three through five who are designated surplus by the Vice President-Human Resources.

MIPP was offered in November and December 1982 only to third through fifth level managers. The plaintiffs allege that Mountain Bell continued to represent to them that MIPP would be restricted to those management levels. After the November/December 1982 MIPP offering, the class members retired under the terms of a less favorable severance plan, the Supplemental Income Protection Program ("SIPP"), adopted for craft employees before 1980 as a part of a collective bargaining agreement. A summary of SIPP sent to participants in May 25, 1983, stated that SIPP participants are nonmanagement employees under age sixty-two, with at least twenty years of net credited service, who have been designated surplus. In late spring of 1982, Mountain Bell began offering what it calls "Special SIPP" benefits to first and second level managers who agreed to be demoted to a nonmanagement craft level, and then to retire immediately. After the plaintiff class members accepted demotion and discharge under SIPP, Mountain Bell offered MIPP at all management levels in November and December 1983, including the first and second levels. These former first and second level managers who had previously retired under SIPP requested MIPP benefits, but Fred Cook and others denied them because the claimants were not participants in MIPP.

The civil enforcement section of ERISA, 29 U.S.C. § 1132 empowers a "participant" to bring an action in federal court. "Participant" is defined as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer...." 29 U.S.C. § 1002(7). The defendants argue that the plaintiffs are not, and have never been participants of MIPP and may not bring a claim under ERISA.

The defendants assert that participation in MIPP is determined by the plan's requirements that 1) the Vice President-Human Resources decides to implement MIPP to reduce a management surplus; and 2) the Vice President-Human Resources declares an individual or a group of employees, who have been managers for at least six months, to be surplus. Those who are identified as surplus may then be offered MIPP, in descending order of net credited service within the surplus group. The plaintiffs agree that they were never declared surplus by the defendant Fred Cook, Vice President-Human Resources. They argue, however, that they were in fact surplus management employees and Fred Cook's failure formally to declare them surplus for purposes of MIPP breached fiduciary duties under ERISA owed to them as participants in the plan.

Whether the plaintiffs may raise any issue of claimed breach of fiduciary duty is dependent on whether they have standing to sue under ERISA as participants in an employee benefit plan. Recently, several circuit courts of appeals have considered the standing issue when former employees are seeking benefits first made available after their terminations from employment. The Fifth Circuit has held that employees who take early retirement and elect to receive lump sum retirement benefits do not have standing to seek the increased payment made to later retirees or to challenge changes in a retirement plan. *See Joseph v. New Orleans Electrical Pension & Retirement Plan*, 754 F.2d 628, 630 (5th Cir.), *cert. denied*, ── U.S. ──, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985); *Yancy v. American*

*Petrofina, Inc.*, 768 F.2d 707, 708–09 (5th Cir.1985). The Ninth Circuit reached a similar result in *Kuntz v. Reese*, 785 F.2d 1410 (9th Cir.1986), in which the court concluded that former employees whose benefits had already been distributed were not eligible to receive benefits or likely to become eligible for benefits, and thus were not "participants" with standing to bring ERISA claims. The premise of these opinions is that the entitlement to increased benefits had not become vested before the changes were made.

In a more closely analogous case, *Stanton v. Gulf Oil Corp.*, 792 F.2d 432 (4th Cir.1986), the Fourth Circuit held that a former employee who took early retirement was not a participant in an employee severance benefits plan which went into effect after he retired. Before the plaintiff in that case made a decision to take early retirement, he met with a human resources employee, who was a personal friend, to discuss benefits. Mr. Stanton inquired if any changes in the retirement plan were contemplated. The local supervisor knew of no pending changes, and the plaintiff signed his retirement papers, saying he expected to receive any later increased benefits. In fact, the Gulf Oil Board had already approved a new severance plan for designated employees taking voluntary early retirement. The plan was officially instituted on the very day of Stanton's retirement, was announced two months later, and became effective four months later. As in the present circumstances, the plan was to apply only in cases when there was a permanent workforce reduction and when the company had advised the employee by personal letter that he or she was eligible.

Mr. Stanton argued that he was a participant in the plan because he may have become eligible to receive benefits but for his leaving his employment by electing early retirement, and because the extension of the plan to persons in his salary grade after he had retired put into effect a plan already adopted by the company. The Fourth Circuit rejected his argument because it would "impose participant status

on every single employee who but for some future contingency may become eligible" for benefits, a broad reading of "participant" the court found unsupported by caselaw or the statute. *Id.* at 435.

The court also found that a plan fiduciary's failure to give information regarding amendments to the plan before they are put into effect is no violation of ERISA. "This is so because the legislative intent of ERISA was not to assure the sanctity of early retirement expectations, but to safeguard accrued retirement benefits." *Id.* The Fourth Circuit held that because Stanton had retired before the plan was extended to individuals in his wage category and because Stanton had never received the requisite personal letter advising him that he was eligible, he was not a participant in the plan. ERISA did not mandate fidicuary duties to him as a nonparticipant.

The plaintiffs argue that the present circumstances are distinguishable from the cases cited, particularly in that the plaintiffs contend that they are claiming benefits under a plan adopted in 1980 before they retired rather than a plan put into effect after their retirement. They cite *Calhoun v. Falstaff Brewing Corp.*, 478 F.Supp. 357 (E.D.Mo.1979), *trial sub nom., Dependahl v. Falstaff Brewing Corp.*, 491 F.Supp. 1188 (E.D.Mo.1980), *aff'd in part and rev'd in part on other grounds*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) as appropriate precedent. In that case, top corporate executives were terminated after a takeover. The company then directed that severance payments to those former employees be stopped until the executives agreed to waive their rights to other benefits. One of the executives was declared ineligible for any severance benefits based on an amendment made shortly before his termination, in anticipation of mass firings by Falstaff, which imposed a requirement of fifteen years of service before severance benefits were payable. The plaintiff Calhoun would have been eligible for severance benefits under the plan's terms prior to that amendment, but fell short of the fifteen year requirement. The court held,

after trial to the court, that such a change in the severance plan was a clear violation of the company's duty as a fiduciary to act in the sole interest of the beneficiaries. 491 F.Supp. at 1197. The *Falstaff Brewing* case never addressed the issue of standing or whether the plaintiff was a participant in the plan which by its amended terms excluded him from benefits. The court addressed the issue as a unilateral change in a plan in which the plaintiff was a participant. The court's opinion is of no assistance in defining "participant"—the question which is now before this court.

This court finds the Fourth Circuit's view persuasive. As in *Stanton*, the plaintiffs in this case claim entitlement to increased benefits provided by a plan adopted by the employer, but not extended to the plaintiffs at the time of their retirement. The question is whether at the time of their retirement they were employees "who ... may become eligible to receive a benefit."

The answer is controlled by the language in MIPP as adopted in 1980. It limits participation to those "who are individually or as a group designated by the Vice President-Human Resources as surplus." From that definition in the plan, as well as the announcement in the newsletter in November, 1980, it was clear that participation in MIPP benefits was contingent upon a management decision and declaration that certain employees had become surplus. To accept the plaintiffs' position that the fact of the existence of a surplus of management employees is sufficient to declare them participants would interpret ERISA to deny basic management rights to an employer facing declining revenues. Congress did not have such an intention. The declaration of surplus employees is a management decision, not a decision by the plan's fiduciary.

The plaintiffs' cross motion for summary judgment is based on the assumption that the plaintiffs are participants in MIPP and have standing to bring ERISA claims. Since this court finds that the plaintiffs are

not participants in MIPP, the plaintiffs' motion fails on the threshold issue.

Plaintiffs also argue that various first and second level managers received MIPP benefits in 1981. Thus, they assert that MIPP was in existence and in use before the offering in November, 1983. They also assert that although MIPP's terms specify that it may be offered only to employees on the active payroll at the time of implementation, MIPP was given to some individuals who had already retired or who did not retire during the offering periods. Plaintiffs' argument is that since the defendants have failed to follow the terms of MIPP in granting benefits to such persons, the defendants must be estopped from denying benefits to the plaintiff class.

These arguments raise factual questions that are irrelevant to the ERISA claims. The terms of MIPP made participation in MIPP subject to a discretionary declaration of surplus. The plaintiffs do not acquire eligibility to receive MIPP benefits or standing to bring an ERISA claim even if Mountain Bell violated the terms of the plan and wrongfully gave MIPP to some individuals, which the defendants deny having done. The appropriate ERISA remedy for the alleged breach of fiduciary duty, upon a claim brought by a participant, is for the fiduciary to make good to the plan any losses, not for more benefits to be paid out. *See* 29 U.S.C. § 1109(a).

This court previously dismissed plaintiffs' common law claims for fraud, breach of contract, and constructive fraud as preempted by ERISA. The dismissal was based on the premise that plaintiffs had an ERISA claim. The contrary conclusion requires reconsideration. Preemption of state law is not to be lightly inferred, and is to be found only when Congress unmistakingly intended to occupy the field in enacting federal regulation. *See Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 522–26, 101 S.Ct. 1895, 1905–07, 68 L.Ed.2d 402 (1981); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1214–16 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 619 (1981); *Munoz v.*

*Prudential Insurance Co.,* 633 F.Supp. 564, 570–72 (D.Colo.1986). Because Congress has chosen to limit ERISA claims to participants, it cannot be said that Congress has occupied the field relating to claims by non-participants in a welfare benefit plan. Congress has not provided a remedy for the alleged misrepresentation to plaintiffs that MIPP benefits would not be available to them. Since ERISA does not regulate interaction among a plan fiduciary, an employer, and a non-participant in an employee benefit plan, it does not preempt the state common law claims.

Accordingly, it is

ORDERED that the plaintiffs' claims brought under ERISA are dismissed, and this court's January 3, 1986 order certifying the ERISA claims as a class action is vacated; and it is

FURTHER ORDERED that this dismissal is without prejudice to any common law claims the plaintiffs may assert, and the named plaintiffs have twenty days to file an amended complaint.